ESTHER KLEIN *v.* DEWEES & INGALLS.

Mortgage certificate of reinscription, as follows : " And the general one against R. M. W., in favor of *Thomas R. Ingalls,* resulting from a judgment rendered by same court as above, on the 9th December, 1839, for six thousand one hundred and six one dollars and sixty-nine cents, interest and costs, being the reinscription made in this office, on the 6th of August, 1849, of the same judgment recorded on the 13th December, 1839, in this office ; *which original judgment was, on the 16th November,* 1843, *cancelled and annulled but so far only as it bears on and affect the three squares of ground above described, and no further." By the Court :* It is not pretended but the original mortgage was properly cancelled by the Sheriff. What then was the effect of the reinscription ? We think it was merely to continue in force the judicial mortgage, just as it existed previously. The mortgage had no greater force the day after its reinscription, than it had the day before. The reinscription informed *Ingalls,* as it did all the world besides, that the judicial mortgage as to these lots had been cancelled. We do not think *Ingalls* can now be permitted to gainsay this record, which he has caused to be made in the office of Recorder of Mortgages, where alone his judgment could acquire the force of a mortgage, even as against W.

APPEAL from the Third District Court of New Orleans, *Kennedy,* J. *Roselius,* for plaintiff. *Strawbridge,* for defendants.

MERRICK, C. J.* *Thomas P. Ingalls* having seized, under an execution issued against *R. M. Wellman,* three lots of ground in Greenville, in the parish of Jefferson, the plaintiff instituted the present action of injunction to restrain the sale of the property seized.

The material facts out of which this controversy arises, are these : *Ingalls* recovered judgment against *R. M. Wellman,* for $6,161 69, on the 10th day of December, A. D. 1839, which was recorded on the 13th of the same month in the mortgage office of the parish of Jefferson. *R. M. Wellman* appears to have been insolvent, and a fi. fa. issued on this judgment in 1841, was returned *nulla bona.*

In 1836, *James Ogelvie* sold to *Catharine J. Wellman,* the daughter of *R. M. Wellman,* the three squares of ground in controversy, reserving the vendor's privilege and a mortgage upon them to secure the price. *Catharine J. Wellman* having died, and *R. M. Wellman* having become her sole heir, *Ogelvie* instituted suit against *R. M. Wellman,* to recover the notes due as the remainder of the price, and on the 11th day of April, 1842, obtained judgment for six hundred and fifty dollars and interest, and his special mortgage to secure the same was recognized.

An execution issued on this judgment, and on the 22d of August, 1842, at the Sheriff's sale, the plaintiff purchased the three lots for nine hundred and thirty-six dollars cash. Her Sheriff's title was not recorded until after this litigation commenced. The Sheriff, it appears, released all the subsequent judicial mortgages upon the property.

After *Ogelvie's* mortgage had become extinguished, both by payment and prescription, *T. R. Ingalls* caused his judgment to be reinscribed against *R. M. Wellman,* in the office of the Recorder of Mortgages, and issued his execution and caused the property to be seized as belonging to him, *Wellman.* Since the seizure and institution of the suit, *Wellman* has died ; the fi. fa. is returned, and the suit is now prosecuted as an hypothecary action on the reconventional demand of *Ingalls.*

It is contended in this court on his behalf that by the reinscription of his

---

* LEA, J., not having been present at the argument, took no part in this decision.

mortgage it operated as a general mortgage upon all property standing in *R. M. Wellman's* name; that inasmuch as the plaintiff's title was not recorded, by the words of the Act of 1813, the sale was "utterly null and void to all intents and purposes." Bullard & Curry's Dig., 596. The cases of *Perrou* v. *Maillan*, 11 L. R., 489, and *Lee* v. *Darramon*, 3 Rob., 161, are cited in support of this position.

We think the manner in which *Ingalls'* mortgage was reinscribed will prevent him from invoking the benefit of these authorities. The certificate of mortgages shows that the inscription was not absolute, but carried with it the former erasure or cancellation which had been made in favor of this purchaser. The mortgage is embraced in the certificate of mortgages in these words:

"5th. And the general one against *R. M. Wellman*, in favor of *Thomas R. Ingalls*, resulting from a judgment rendered by same court as above, on the 9th December, 1839, for six thousand one hundred and six one 69-100 dollars, interests and costs, being the reinscription made in this office on the 6th of August, 1849, of the same judgment recorded on the 13th of December, 1839, in this office; *which original judgment was, on the 16th November, 1843, cancelled and annulled, but so far only as it bears on and affect the three squares of ground above described, and no further.*"

It is not pretended but the original mortgage was properly cancelled by the Sheriff. 1 An., 10. What then was the effect of the reinscription? We think it was merely to continue in force the judicial mortgage just as it existed previously. The mortgage had no greater force the day after its reinscription than it had the day before. The reinscription informed *Ingalls*, as it did all the world besides, that the judicial mortgage as to those lots had been cancelled. We do not think *Ingalls* can now be permitted to gainsay this record which he has caused to be made in the office of the Recorder of Mortgages, where alone his judgment could acquire the force of a mortgage, even as against *Wellman*. This view of the case renders it unnecessary to consider what would have been the effect of a judgment recorded under like circumstances, against *Wellman* generally.

The judgment of the lower court must, therefore, be affirmed.

Judgment affirmed.